UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

WILLARD L. JAMES,                    )
                                     )  No. CV-10-00270-JPH
              Plaintiff,             )
                                     )
v.                                   )
                                     )  ORDER GRANTING DEFENDANT'S
MICHAEL J. ASTRUE,                   )  MOTION FOR SUMMARY JUDGMENT
Commissioner of Social               )
Security,                            )
                                     )
              Defendant.             )
                                     )
_____  )

     BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF

No. 15, 21.) Attorney Rebecca M. Coufal represents Willard L. James

(Plaintiff); Special Assistant United States Attorney Matthew W.

Pile represents the Commissioner of Social Security (Defendant).

The parties have consented to proceed before a magistrate judge.

(ECF No. 6.)  After reviewing the administrative record and briefs

filed by the parties, the court **GRANTS** the Defendant's motion for

Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**JURISDICTION**

     Plaintiff protectively filed for disability insurance benefits

(DIB) on May 20, 2004.[1] (Tr. 98; 123.) He alleged disability due to

rheumatoid arthritis, constant pain and poor eyesight with an

_____

     [1]As the Defendant points out, the ALJ's recitation of the

protective filing date as June 18 was in error.  (Tr. 512; 98.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

alleged onset date of June 12, 2000.  (Tr. 99.)  His claim was denied initially and on reconsideration.  Plaintiff requested a hearing before an administrative law judge (ALJ), which took place on March 19, 2007 and was continued on June 22, 2007.  The ALJ issued an unfavorable decision on July 12, 2007 and eventually,[2] the Appeals Council remanded for: (1) an evaluation of Plaintiff's mental impairments; (2)an explanation related to the weight given to medical source opinions; (3)an evaluation of Plaintiff's credibility;  and (4) an evaluation of the lay testimony.  (Tr. 534.) The second hearing was held before ALJ R. J. Payne on August 6, 2009.  (Tr. 699-723.)  Plaintiff, who was represented by counsel, and medical experts Arvin Klein, M.D. and Thomas McKnight, Ph.D., also testified.[3]  The ALJ  denied benefits on August 19, 2009, and the Appeals Council denied review.  (Tr. 512-23; 498-500.)  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 59 years old with a high school education. (Tr. 716; 632.)  He lives in a house with his long-term girlfriend and dog.  (Tr. 461; 634.)  He reported that his hobbies include fishing, camping, riding a motorcycle when he is able, and gardening. (Tr. 634.)

---

[2]Ultimately, the parties stipulated to a remand pursuant to sentence four, and the case was remanded to the Appeals Council. (Tr. 525-27.)

[3]Plaintiff also testified at the previous hearing on June 22, 2007.  (Tr. 461-96.)

Plaintiff worked for 12 years as a computer draftsman, using the CAD system. (Tr. 464.) He testified that he had to stop working because he could no longer perform the duties of his job. (Tr. 718.) Plaintiff explained that he could not concentrate and he was making mistakes and having problems sitting. (Tr. 718-19.) He also testified at the first hearing, that he had constant pain in his neck and back, and episodes of dizziness that occasionally included brief periods of lost consciousness. (Tr. 465-67.)

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) assessment is considered. If plaintiff cannot perform this work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart*

1  *v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172

2  F.3d 1111, 1113 (9th Cir. 1999).   The initial burden is met once

3  plaintiff establishes that a physical or mental impairment prevents

4  the performance of previous work.   *Hoffman v. Heckler*, 785 F.3d

5  1423, 1425 (9th Cir. 1986).   The burden then shifts, at step five,

6  to the Commissioner to show that (1) plaintiff can perform other

7  substantial gainful activity and (2) a "significant number of jobs

8  exist in the national economy" which plaintiff can perform.   *Kail v.*

9  *Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984); *Tackett v. Apfel*, 180

10 F.3d 1094, 1099 (1999).

11                     **ADMINISTRATIVE DECISION**

12        ALJ Payne found Plaintiff was insured for DIB from June 12,

13 2000 through December 31, 2005.   (Tr. 513.)   At step one, the ALJ

14 found Plaintiff had not engaged in substantial gainful activity

15 between June 12, 2000 and December 31, 2005.   (Tr. 514.)   At step

16 two, he found Plaintiff had severe impairments of restless leg

17 syndrome and generalized arthralgia.   (Tr. 515.)   He concluded

18 recently diagnosed mental impairments were not severe.   (Tr. 515.)

19 The ALJ determined at step three Plaintiff's medically determinable

20 impairments, alone and in combination, did not meet or medically

21 equal one of the listed impairments in 20 C.F.R., Appendix 1,

22 Subpart P, Regulations No. 4 (Listings).   (Tr. 515.)   The ALJ found

23 Plaintiff's subjective complaints regarding functional limitations

24 were not fully credible.   (Tr. 518-19.)   At step four, the ALJ

25 concluded plaintiff's residual functional capacity was the full

26 range of medium work.   (Tr. 517.)   The ALJ concluded that Plaintiff

27 was able to perform his past relevant work as a computer draftsman.

28 (Tr. 522.)   As a result, the ALJ concluded Plaintiff has not been

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

1   under a disability as defined in the Social Security Act from June

2   12, 2000, the alleged onset date, through December 31, 2005, the

3   date last insured  (Tr. 523.)

4                        **STANDARD OF REVIEW**

5       Congress has provided a limited scope of judicial review of a

6   Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the

7   Commissioner's decision, made through an ALJ, when the determination

8   is not based on legal error and is supported by substantial

9   evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985);

10  *Tackett,* 180 F.3d at 1097 (9th Cir. 1999).  "The [Commissioner's]

11  determination that a plaintiff is not disabled will be upheld if the

12  findings of fact are supported by substantial evidence." *Delgado v.*

13  *Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(*citing* 42 U.S.C. §

14  405(g)).  Substantial evidence is more than a mere scintilla,

15  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975),

16  but less than a preponderance.  *McAllister v. Sullivan*, 888 F.2d

17  599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and*

18  *Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial

19  evidence "means such evidence as a reasonable mind might accept as

20  adequate to support a conclusion." *Richardson v. Perales*, 402 U.S.

21  389, 401 (1971) (citations omitted).   "[S]uch inferences and

22  conclusions as the [Commissioner] may reasonably draw from the

23  evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289,

24  293 (9th Cir. 1965).  On review, the Court considers the record as

25  a whole, not just the evidence supporting the decision of the

26  Commissioner.   *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir.

27  1989)(*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980).

28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

1    It is the role of the trier of fact, not this Court, to resolve
2  conflicts in evidence.  *Richardson,* 402 U.S. at 400. If evidence
3  supports more than one rational interpretation, the Court may not
4  substitute its judgment for that of the Commissioner. *Tackett*, 180
5  F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).
6  Nevertheless, a decision supported by substantial evidence will
7  still be set aside if the proper legal standards were not applied in
8  weighing the evidence and making the decision. *Brawner v. Secretary*
9  *of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).
10 Thus, if there is substantial evidence to support the administrative
11 findings, or if there is conflicting evidence that will support a
12 finding of either disability or nondisability, the finding of the
13 Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-
14 1230 (9th Cir. 1987).

15                                **ISSUES**

16     The question is whether the ALJ's decision is supported by
17 substantial evidence and free of legal error.  Plaintiff raises four
18 issues, contending that the ALJ erred: (1) in his credibility
19 assessment of Plaintiff; (2) by failing to include osteoarthritis
20 and depression as severe impairments; (3) in his weighting of the
21 doctors's opinions; and (4) by discounting the lay testimony. (ECF
22 No. 16 at 12-18.)  Defendant contends the ALJ's decision is
23 supported by substantial evidence and is free of legal error. (ECF
24 No. 22 at 7-23.)

25                              **DISCUSSION**
26 **1.  Credibility.**

27     The Plaintiff argues that the ALJ failed to provide the
28 necessary reasons, supported by the record, for finding him less

1   than fully credible.   (ECF No. 16 at 19.)   The Commissioner's

2   credibility determination must be supported by findings sufficiently

3   specific to permit the court to conclude the ALJ did not arbitrarily

4   discredit claimant's testimony.   *Bunnell v. Sullivan*, 947 F.2d 341,

5   345-46 (9th Cir. 1991) (en banc).   If there is no affirmative

6   evidence that the claimant is malingering, the ALJ must provide

7   "clear and convincing" reasons for rejecting the claimant's

8   testimony regarding the severity of symptoms.   *Reddick v. Chater*,

9   157 F.3d 715, 722 (9th Cir. 1998).

10      The ALJ engages in a two-step analysis in deciding whether to

11   admit a claimant's subjective symptom testimony.   *Smolen v. Chater*,

12   80 F.3d 1273, 1281 (9th Cir. 1996).   Under the first step, the

13   claimant must produce objective medical evidence of an underlying

14   medically determinable impairment, and must show that the

15   impairment, or a combination of impairments, "could reasonably be

16   expected to produce pain or other symptoms."   *Cotton v. Bowen*, 799

17   F.2d 1403, 1405 (9th Cir. 1986).

18      Once the *Cotton* test is met, the ALJ must evaluate the

19   credibility of the claimant.   When assessing a claimant's

20   credibility, the lack of objective medical evidence is a proper

21   factor to consider along with: a claimant's treatment history; daily

22   activities; work record as well as the claimant's reputation for

23   truthfulness;   inconsistencies in her testimony, or between her

24   testimony and conduct observations of physicians and third parties

25   with personal knowledge of the claimant's symptoms.   *Tommasetti v.*

26   *Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Light v. Soc. Sec.*

27   *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).   In addition, an

28   adjudicator may draw adverse inferences from a claimant's failure to

seek treatment for symptoms for months after the alleged onset of disability. *Bruton v. Massanari*, 208 F.3d 824, 828 (9th Cir. 2001).

If the ALJ finds a claimant's statements are not entirely credible, he need not reject totally a claimant's symptom testimony. The ALJ may find the claimant's statements about pain to be credible to a certain degree, but discount statements based on his interpretation of evidence in the record as a whole. *SSR* 96-7p. If the ALJ's credibility findings are supported by substantial evidence in the record, the court may not engage in second-guessing. *See Morgan v. Commissioner, Soc. Security Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

In this case, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his reported symptoms were not entirely credible. (Tr. 521.) In support of this conclusion, the ALJ reviewed Plaintiff's medical records from before, during and after the claims period. (Tr. 519.) The ALJ also reviewed the records related to Plaintiff's alleged mental impairments and found scant evidence of complaints or treatment during the relevant period. (Tr. 520.) Additionally, the ALJ noted Plaintiff's test results that revealed symptom exaggeration, along with Dr. Pollack's opinion that Plaintiff may have overstated his difficulties. (Tr. 520.)

Contrary to Plaintiff's assertions, the ALJ's reasons for finding Plaintiff less than credible were clear and convincing, specific, and supported by the record. For example, in a July, 2009 psychological assessment that occurred after the claims period, John B. Severinghaus, Ph.D., noted that Plaintiff seemed "to at times acknowledge almost any possible problem I ask him about." (Tr.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

635.) Dr. Severinghaus also reported that Plaintiff's SIMS test score was suggestive of symptom exaggeration. (Tr. 635.)

Additionally, in his June, 2004 application, Plaintiff reported his disabilities as "rheumatoid arthritis/constant pain/bad eyesight." (Tr. 103; 111.) He stated that the symptoms left him unable to work in 1997, but he acknowledged that while he took an extended leave twice, he continued to work until June of 2000. (Tr. 103.) As the ALJ noted, while Plaintiff claimed he could no longer work as of 2000, he did not seek regular treatment until approximately three years later. (Tr. 177.) The claimant's treatment history is an appropriate factor to consider when assessing credibility. *Tommasetti*, 533 F.3d at 1039.

Finally, the objective evidence lacks support for Plaintiff's alleged disabilities. The medical records explicitly indicate that Plaintiff does not suffer from rheumatoid arthritis, and while his knees have been noted as swollen and irritated, no clear etiology was identifiable. (Tr. 203; 230-31.) Nor does the record indicate that during the claims period, Plaintiff had a disabling condition with his eyesight. (Tr. 190; 197-200; 292.) When assessing a claimant's credibility, the lack of objective medical evidence is a proper factor to consider. *Tommasetti,* 533 F.3d at 1039.

In this case, the ALJ properly provided clear and convincing, specific reasons that are supported by the record for determining Plaintiff's diminished credibility. If the ALJ's credibility findings are supported by substantial evidence in the record, the court may not engage in second-guessing. *See Morgan*, 169 F.3d at 600; *Fair*, 885 F.2d at 604 ("Credibility determinations are the province of the ALJ.").

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

**2.    Step Two: Severe Impairment Determinations**

Plaintiff contends that the ALJ erred by failing to include depression and osteoarthritis as severe impairments. (ECF No. 16 at 12.) At step two of the sequential process, the ALJ must determine whether a claimant suffers from a "severe" impairment, i.e., one that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations. See e.g. *Edlund*, 253 F.3d at 1159–60: *Fair*, 885 F.2d at 603; *Key v. Heckler*, 754 F.2d 1545, 1549050 (9th Cir. 1985).

**a.    Depression**

Plaintiff contends that depression should have been included in his severe impairments. The ALJ found that Plaintiff's depression was not a severe impairments because Plaintiff was diagnosed with only mild depression – dysthymia – and the record reveals he declined medication because he was improving. (Tr. 520.) In support of a depression impairment, Plaintiff cites a psychiatric evaluation from Dr. Twigg in 1997; treatment for depression at Valley Family Physicians from 2000-2003, and Dr. Pollack's psychological evaluation. (ECF No. 16 at 13.)

Dr. Twigg evaluated Plaintiff in September, 1997, but his

evaluation does not support Plaintiff's argument. (Tr. 245.) First, as the ALJ noted, Dr. Twigg's evaluation predates Plaintiff's alleged onset of disability by over three years. (Tr. 520.) Additionally, Dr. Twigg's diagnosis was "dysthymic disorder" with several rule-out disorders. (Tr. 250.) Dysthymic disorder "is a chronic type of depression in which a person's moods are regularly low. The symptoms are not as severe as with major depression." PubMed Health, National Institutes of Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/ PMH0001916 (2011).

Second, the medical records from 2000 indicate that Plaintiff requested a doctor's note to take medical leave from work due to anxiety, not depression. (Tr. 170.) He complained of anxiety, poor sleep and some depression for a few months in 2000. (Tr. 171-74.) Plaintiff ultimately failed to return to work due to what he reported as car trouble, and he was fired. (Tr. 174.)

Few medical records are available from 2002. In 2003, Plaintiff visited the doctor roughly half a dozen times, and was diagnosed with arthralgias, depression, and restless leg syndrome. Plaintiff was prescribed 100 mg of Zoloft. (Tr. 176-77.) Dr. Rinaldi stated that he treated Plaintiff from June 5, 2000 to December 20, 2003 "primarily for joint pain, generalized arthralgias and restless leg syndrome." (Tr. 561.) Dr. Rinaldi acknowledged his notes reflected treatment for depression and anxiety, but as to the severity of the depression, Dr. Rinaldi deferred to the counselors and psychologists who treated Plaintiff. (Tr. 561.)

By contrast, the records from early 2004 do not indicate depression, but instead relate to Plaintiff's pain. (Tr. 185-86.) In late 2004, one of Plaintiff's secondary diagnoses was "Depressive

disorder NEC," but he was not prescribed an antidepressant. (Tr. 191; 216.) It appears that between 2003 and 2005, Plaintiff did not take antidepressants. Dennis R. Pollack, Ph.D. evaluated Plaintiff on March 5, 2007, after the claim period, and diagnosed in part, a dysthymic disorder. (Tr. 368.)

In sum, no evidence exists that between 2000 and 2005, Plaintiff was diagnosed with severe depression. Nor does any evidence exist in the record that during the claim period, Plaintiff's depression significantly limited his physical or mental ability to do basic work activities. See 20 C.F.R. § 416.920(c). In the absence of evidence that Plaintiff's depression was severe or disabling, the ALJ was unable to find his depression was a severe impairment. As a result, the ALJ's conclusion that Plaintiff's depression was not a severe impairment is supported by the record.

### b. Cervical Impairment, Osteoarthritis.

Plaintiff briefly argues that the ALJ erred by failing to find severe impairments of cervical pain and osteoarthritis.[4] The ALJ

---

[4]Plaintiff's analysis of these issues consists of a single sentence devoted to each: "The VA supports James [sic] cervical pain with the MRI of December 2005 and the X-rays of 2006 both of which show problems. The VA records similarly support a finding of osteoarthritis through James second rheumatological evaluation at the VA in 2007." (ECF NO. 16 at 13.) The court is unable to consider matters that are not "specifically and distinctly argued" in a party's brief. *Carmickle v. Commissioner, Soc. Security Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008); *Paladin Associates, Inc., v. Montana Power Co.*, 328 F.3d 1145, 1164 (9th

found that Plaintiff has the severe impairment of generalized arthralgias, and noted that testing of Plaintiff's neck in 2006 revealed moderate degenerative changes. (Tr. 20.)

With regard to Plaintiff's cervical impairment, the Plaintiff fails to point to evidence in the record, and it appears none exists, to support his argument that his cervical pain was severe or disabling. Tests from June 2006 revealed Plaintiff had "moderate degenerative changes." (Tr. 285; 338.) An MRI in September, 2006, indicated Plaintiff had a small radial tear C3-C4, mild cervical spondylosis throughout the midcervical spine, and mild straightening of the cervical lordosis, consistent with muscle spasm and/or posture. (Tr. 336.) None of the medical evidence supports Plaintiff's argument that his cervical condition was disabling or severe, and Plaintiff's vague assertion that the testing showed "problems" is not sufficient to equate to an impairment. (ECF No. 16 at 13.) The ALJ's conclusion that Plaintiff's cervical issues did not constitute a severe impairment was proper.[5]

Finally, Plaintiff argues that the ALJ erred by failing to find that his osteoarthritis was a severe impairment. As noted earlier, the ALJ found Plaintiff had a severe impairment of generalized arthralgias. Plaintiff cites no evidence in the record to support his claim that osteoarthritis was severe and disabling from 2000-

_____

Cir. 2003).

[5]As the Defendant correctly notes, the ALJ's failure to include an overhead reaching limitation, in light of Dr. Moore's testimony that Plaintiff's neck problems were present prior to December 31, 2005, was harmless error. *Carmickle,* 533 F.3d at 1162-63.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

2005.  In September, 2004, Arthur Scherer, M.D. found Plaintiff had "probable early osteoarthritis of the fingers." (Tr. 203.)  Three years later, in 2007, Dr. Scherer saw Plaintiff again and diagnosed him with osteoarthritis of the hands. (Tr. 417.)  But during the claim period, Plaintiff did not carry a diagnosis for osteoarthritis, nor has he established that osteoarthritis was severe and disabling.  As a result, the ALJ did not err by failing to include osteoarthritis as a severe impairment.

**3.  Medical Opinions.**

Additionally, Plaintiff contends the ALJ erred by dismissing Dr. Pollack's and Dr. Sims's opinions, and by adopting the opinion of Dr. McKnight.  (ECF No. 16 at 15-16.)  In evaluating medical or psychological evidence, a treating or examining physician's opinion is entitled to more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830.  If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

In this case, the ALJ found no evidentiary support within Dr. Pollacks' evaluation for his conclusion that Plaintiff was markedly limited in his ability to sustain work during a day or week. (Tr. 520.)  Dr. Pollack's testing revealed only some difficulty with new learning and the ability to concentrate. (Tr. 520.)  The ALJ also noted that Dr. Pollack's conclusion that Plaintiff had a limited

ability to accept instructions and respond appropriately to criticism was based upon a test that also revealed Plaintiff likely exaggerated his symptoms, and thus the conclusion was unreliable. (Tr. 521.) Finally, the ALJ found that Dr. Pollack's assertion that Plaintiff became disabled prior to December 31, 2005 was entirely unsubstantiated by the evaluation. (Tr. 521.)   The ALJ provided clear and convincing reasons for rejecting Dr. Pollack's conclusions about Plaintiff's limitation, that are supported by the record.  For example, the results of the MMPI-2 test administered by Dr. Pollack to Plaintiff indicated some symptom exaggeration.  Dr. Pollack opined, "he may have been overstating his difficulties." (Tr. 367; 368.)  Dr. Pollack concluded Plaintiff had a dysthymic disorder, with rule out pain disorder associated with both psychological factors and general medical condition, and rule out both opioid use disorder and personality disorder.  (Tr. 368.)

Dr. Pollack also completed a check-the-box Mental Medical Source Statement.  (Tr. 370-73.)  In that form, Dr. Pollack indicated Plaintiff had two moderate limitations: (1) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and (2) the ability to accept instructions and respond appropriately to criticism from supervisors.  (Tr. 371.)  Dr. Pollack listed a single marked limitation in "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 371.)  But, as the ALJ noted, Dr. Pollack's notes contain little support for these limitations, and the testing revealed only some difficulty with new learning and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

ability to concentrate. (Tr. 520; 366-67.) The record supports the ALJ's analysis of Dr. Pollack's evaluation of Plaintiff. Because the ALJ provided clear and convincing reasons for rejecting Dr. Pollack's conclusions, the ALJ's conclusions will not be disturbed.

Plaintiff also generally asserts, without specific analysis, that the ALJ erred by dismissing "the opinions of the VA treating (Dr. Sims) and consulting physicians at the VA."[6] (ECF No. 16 at 15.) The ALJ specifically addressed the VA medical records and found that testing for arthritis by the VA revealed normal results. (Tr. 519.) Additionally, the ALJ noted that Plaintiff asserted he had restless leg syndrome for most of his life, yet acknowledged he was able to work. (Tr. 519.) Finally, the ALJ concluded that when Plaintiff complained of stiff and swollen joints, he had not been taking any medication, his exams indicated normal gait, strength and reflexes, and his reported activities were inconsistent with the severe limitation he described. (Tr. 519.)

Plaintiff fails to identify a diagnosis or endorsement of a disability from the VA that was improperly rejected. Similarly, the Plaintiff provides no analysis of medical records that were allegedly improperly rejected. As noted by the Defendant, Daniel C. Sims, M.D., treated Plaintiff in 2006, after Plaintiff's insured

---

[6]The Defendant noted that it could not meaningfully respond to Plaintiff's contention that the ALJ erred in rejecting the opinions of unspecified "consulting physicians." (ECF No 22 at n.3.) For the same reasons and in the absence of legal analysis, the court will not address the the Plaintiff's vague allegations relating to "consulting physicians." *See Carmickle*, 533 F.3d at 1162-63.

status expired.  (e.g., Tr. 288; 290; 293; 298; 317.)  Dr. Sims'
treatment notes do not provide support for Plaintiff's alleged
disabilities.  (See e.g., Tr. 297-98; 312.)  Nor did Dr. Sims assess
any functional limitations for Plaintiff.

The Plaintiff contends that the ALJ erred by giving weight to
the  opinions of the medical expert, Thomas McKnight, Ph.D.  The ALJ
gave great weight to Dr. McKnight's opinion because he was in a
unique position of being able to review the overall evidence, and
because his opinion was consistent with the evidence.  (Tr. 521.)
Dr. McKnight opined that Plaintiff's depression was secondary to his
physical problems and to his addiction to pain medication.  (Tr.
697.)  Dr. McKnight assessed Plaintiff with only mild functional
limitations.  (Tr. 695.)

Dr. McKnight's opinions are supported by the record.  In 2003,
Dr. Rinaldi indicated he treated Plaintiff "primarily for joint
pain..."  (Tr. 561.)  The record contains treatment notes that
indicate Plaintiff's pain complaints, along with his depression, but
in 2004, Plaintiff's complaints about depression decreased while the
pain complaints increased.  (See e.g., Tr. 177; 185-86; 191; 202-03;
208; 210.)  The record also contains multiple instances of the
diagnosis of opioid dependence. (Tr. 284; 295; 302; 310; 344; 348;
351.)  The ALJ provided specific and legitimate reasons that are
supported by substantial evidence in the record for giving
significant weight to the conclusions of Dr. McKnight.

Finally, Plaintiff argues that the ALJ erred by adopting the
opinion of Dr. Klein over the opinion of Dr. Moore.  (ECF No. 16 at
17.)  Dr. Moore testified that Plaintiff could perform a limited
range of light work, and two years later Dr. Klein testified that

Plaintiff could perform a full range of medium work. (Tr. 456-58; 714.)  In this case, the difference between these experts' opinions is immaterial because the ALJ found that Plaintiff was able to perform his previous work as a computer draftsman, which is classified as sedentary work.  DICOT 007.281-101, 1991 WL 646291. As a result, the medical experts' contradictory testimony is not relevant in light of the ALJ's conclusion that Plaintiff can perform his previous, sedentary work.

### 4.   Lay testimony.

The Plaintiff contends that the ALJ erred by giving no weight to the lay testimony from Plaintiff's girlfriend. (ECF No. 16 at 18.)  Plaintiff specifically argues that the reason provided by the ALJ - that the girlfriend's statement related to a different, and therefore irrelevant, time frame - was error.  Plaintiff reasons that the ALJ had multiple occasions to inquire of the girlfriend at each hearing, and the ALJ's failure to take her testimony was error. (ECF No. 16 at 18.)

In determining disability an ALJ must consider lay witness testimony concerning a claimant's ability to work. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009), citing *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); see also 20 C.F.R. §§ 404.1513(d)(4), (e). Such testimony is competent evidence and "cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). If an ALJ disregards lay witness testimony he must provide specific reasons "that are germane to each witness." *Id; Stout,* 454 F.3d at 1054. Lay testimony can never establish disability absent corroborating competent medical evidence. See *Nguyen*, 100 F.3d at 1467.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19

In this case, the lay evidence consisted of a letter dated June 22, 2007 from Allison Atkins, Plaintiff's girlfriend. (Tr. 166-68.) Ms. Atkins' letter describes Plaintiff and his abilities up to 1998. She described Plaintiff's work, and one paragraph explains Plaintiff's physical limitations that she has observed. (Tr. 167.) Ms. Atkins relates that Plaintiff cannot ride his motorcycle, fish, camp, play music or take long walks without being sore. (Tr. 167.)

The ALJ found that Ms. Atkins' observations were from a time period other than from the time relevant to the claim. (Tr. 522.) Additionally, the ALJ found inconsistencies existed between the limitations that Ms. Atkins reported compared with the activities Plaintiff admitted he could still do. (Tr. 522.)

The record supports the ALJ's reasons. It is not clear from the letter if the description of Plaintiff's decline in abilities occurred during the claim period, or after 2005. Additionally, the record supports the ALJ's determination that some of Ms. Atkins's assertions about Plaintiff's limitations are contradicted by the Plaintiff's own admissions. For example, Ms. Atkins stated that Plaintiff cannot play music or perform yard work, yet Plaintiff admitted that his hobbies included music and gardening. (Tr. 167; 202; 634.) Ms. Atkins also asserted that Plaintiff no longer fishes, but Plaintiff told Dr. Pollack in March 2007 that he has purchased a fishing license in the past three years. (Tr. 365.) He also told Dr. Pollack that his hobbies include music, fishing, camping and motorcycle riding when able. (Tr. 366.)

The ALJ's reasons for discounting Ms. Atkins' assertions were specific and germane. Plaintiff's argument that the ALJ should have called Ms. Atkins to testify is without citation to legal authority,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 20

and it appears none exists.  It is the burden of the Plaintiff, not the ALJ, to provide evidence establishing entitlement to disability benefits.  See *Rhinehart*, 438 F.2d at 921(in steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits).  Because the ALJ provided specific, germane reasons for providing no weight to Ms. Atkins's letter, the ALJ did not err.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is free of legal error and supported by substantial evidence.

**IT IS ORDERED:**

1.   Defendant's Motion for Summary Judgment **(ECF No. 21)** is **GRANTED**.

2.   Plaintiff's Motion for Summary Judgment **(ECF No. 15)** is **DENIED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for **DEFENDANT** and the file shall be **CLOSED**.

DATED this 22nd day of August, 2011.

                    S/JAMES P. HUTTON
              UNITED STATES MAGISTRATE JUDGE